# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION AT COLUMBUS

| | | |
|---|---|---|
| SHAWNTELLE HEATH, | : | Case No. 2:22-cv-1186 |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | District Judge Edmund A. Sargus, Jr. |
| | : | Magistrate Judge Kimberly A. Jolson |
| WARDEN TERI BALDAUF, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| | : | |

## ORDER AND INITIAL SCREEN REPORT AND RECOMMENDATION

Plaintiff, a former inmate at the Ohio Reformatory for Women (ORF),[1] brings this *pro se* action under 42 U.S.C. § 1983 against ORF Warden Teri Baldauf[2] and Lt. Kramer.  The Court liberally construes Plaintiff's complaint as also bringing claims under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq*. (ADA), and/or Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Rehabilitation Act).[3]  By separate Order, Plaintiff has been granted

---

[1] The Ohio Department of Rehabilitation and Correction (ODRC) website indicates that Plaintiff is currently on judicial release.  *See* https://appgateway.drc.ohio.gov/OffenderSearch/Search/Details/W106391 (last viewed on May 16, 2022).

[2] Plaintiff alternatively spells this Defendant's name "Bauldauf."  (*See* Doc. 1-1, at PageID 14).  For consistency, the Court spells this Defendant's name "Baldauf" throughout this Order and Report and Recommendation..

[3] Although Plaintiff's complaint states that she is bringing discrimination claims under Title VII (*see* Doc. 1-1, at PageID 19), "[t]he plaintiff has not alleged any facts that would support a claim under Title VII, because [s]he has not alleged discrimination arising in the context of employment."  *Meeks v. Schofield*, No. 3:12-MC-00035, 2012 WL 1934416, at *3 (M.D. Tenn. May 29, 2012).  Rather, the Court understands Plaintiff's discrimination claims to be brought under the ADA and/or the Rehabilitation Act, given Plaintiff's allegations that she was denied adequate accommodations while housed at ORF.  (*See* Doc. 1-1, at PageID 19-20).  Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."  42 U.S.C. § 12132.  The Rehabilitation Act provides that:  "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794.  Claims asserted under the Rehabilitation Act are analyzed similarly to claims asserted under the ADA.  *See Lee v. City of Columbus*, 636 F.3d 245, 250 (6th Cir. 2011); *McPherson v. Mich. High Sch.*

leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

This matter is now before the Court for a s*ua sponte* review of the complaint to determine whether the complaint or any portion of it should be dismissed because it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. *See* Prison Litigation Reform Act of 1995 § 804, 28 U.S.C. §1915(e)(2)(B).

**I.**

In enacting the original *in forma pauperis* statute, Congress recognized that a "litigant whose filing fees and court costs are assumed by the public, unlike a paying litigant, lacks an economic incentive to refrain from filing frivolous, malicious, or repetitive lawsuits." *Denton v. Hernandez,* 504 U.S. 25, 31 (1992) (quoting *Neitzke v. Williams,* 490 U.S. 319, 324 (1989)). To prevent such abusive litigation, Congress has authorized federal courts to dismiss an *in forma pauperis* complaint if they are satisfied that the action is frivolous or malicious. *Id.*; *see also* 28 U.S.C. §§ 1915(e)(2)(B)(i) and 1915A(b)(1). A complaint may be dismissed as frivolous when the plaintiff cannot make any claim with a rational or arguable basis in fact or law. *Neitzke v. Williams,* 490 U.S. 319, 328-29 (1989); *see also Lawler v. Marshall*, 898 F.2d 1196, 1198 (6th Cir. 1990). An action has no arguable legal basis when the defendant is immune from suit or when plaintiff claims a violation of a legal interest which clearly does not exist. *Neitzke,* 490 U.S. at 327. An action has no arguable factual basis when the allegations are delusional or rise to the level of the irrational or "wholly incredible." *Denton,* 504 U.S. at 32; *Lawler,* 898 F.2d at 1199. The Court need not accept as true factual allegations that are

---

*Athletic Ass'n,* 119 F.3d 453, 459 (6th Cir. 1997) (en banc).

"fantastic or delusional" in reviewing a complaint for frivolousness. *Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (quoting *Neitzke*, 490 U.S. at 328).

Congress also has authorized the *sua sponte* dismissal of complaints that fail to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915 (e)(2)(B)(ii) and 1915A(b)(1). A complaint filed by a *pro se* plaintiff must be "liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)). By the same token, however, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Hill*, 630 F.3d at 470-71 ("dismissal standard articulated in *Iqbal* and *Twombly* governs dismissals for failure to state a claim" under §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The Court must accept all well-pleaded factual allegations as true, but need not "accept as true a legal conclusion couched as a factual allegation." *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Although a complaint need not contain "detailed factual allegations," it must provide "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual

enhancement." *Id.* at 557. The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (citations omitted).

## II.

### A.     Accessibility and Disciplinary Segregation

In her complaint, Plaintiff alleges that she is a "paraplegic/amputee above the knee." (Doc. 1-1, at PageID 20). She further alleges that, upon her entry to ORW, she was given the "TABE" test for acceptance into a college/vocational program at ORW. She states that she passed the test and, after being placed on a waitlist, was accepted into a Business Office System Software (B.O.S.S.) class. (Doc. 1-1, at PageID 19). Plaintiff alleges that, in October 2021, she was "kited" to go to orientation. She further alleges that, as she was waiting for another inmate to carry her into the building for class, Defendant Kramer screamed at her for being "out of place." (Doc. 1-1, at PageID 19-20). According to Plaintiff, she tried to tell Lt. Kramer that she went to school but Lt. Kramer did not believe her and placed her in "the hole." (Doc. 1-1, at PageID 20). Plaintiff states that she was placed in segregation for three hours but was let go because she had "not violat[ed] any rules." (Doc. 1-1, at PageID 20). Plaintiff alleges that she filed a grievance against Lt. Kramer but was told they needed more time and, after five months, had still not received a reply. (Doc. 1-1, at PageID 20).

Plaintiff also alleges that, due to the building not being accessible, she was only allotted one day a week for the class when the "regular class gets 5 days a week." (Doc. 1-1, at PageID 20). Plaintiff alleges that, after grieving this matter, she was given a "special discharge." (Doc. 1-1, at PageID 20).

Plaintiff alleges that on another occasion she was asked to be a model for a student in cosmetology and had to be carried up to the third floor and back down. Plaintiff alleges that she

4

also put in a cash slip to get her hair done in July but "it was never answered because of [her] disability." (Doc. 1-1, at PageID 20). Additionally, Plaintiff alleges that if she ordered a "box" from the "vault, "she had to ask another inmate to get it for her because the basement is not accessible. (Doc. 1-1, at PageID 20). Plaintiff claims that, if there was anything wrong with the box, she could not return it. (Doc. 1-1, at PageID 20).

### B. Medical Care, Shower Chair, and Wheelchair

Plaintiff alleges that, at the time she commenced this action, she had been incarcerated at the ORW for a year with open wounds and an "infection from [her] body rejecting mesh." (Doc. 1-1, at PageID 21). Plaintiff further alleges that when she arrived at ORW she was "locked in the infirmary for 3 days for observation to see if [she] was able to care for [her]self." (Doc. 1-1, at PageID 21). However, according to Plaintiff, unidentified nurses, who are not named as defendants,[4] only checked her temperature and blood pressure. (Doc. 1-1, at PageID 21). Plaintiff alleges that, on the day she was released from the infirmary, NP Brooks, who is not named as a defendant, checked the wounds and prescribed Plaintiff seven days of antibiotics. (Doc. 1-1, at PageID 21). Plaintiff asserts that she did not receive any further attention for her wounds until a year later, when they were measured and photographed "but were not treated." (Doc. 1-1, at PageID 21). Plaintiff alleges that, after she complained on October 26, 2021, NP Ajibade, who is not named as a defendant, "swabbed the wounds and cross contaminated the wounds using the same swab to swab both wounds" (Doc. 1-1, at PageID 21). Plaintiff alleges that NP Ajibade prescribed Bactrim for seven days but did not follow-up to see if the infection was gone. Plaintiff alleges that she "kited" because the "E. coli" was not gone. (Doc. 1-1, at

---

[4] A number of Plaintiff's allegations are asserted against non-defendant third parties. To the extent that Plaintiff asserts claims against non-defendants, those claims are subject to dismissal.

5

PageID 21).

Plaintiff further alleges that, at the time she commenced this action, she had been asking for a new shower chair for over six months and had not received one.  She alleges that the shower chair she was using had collapsed several times, that she had hurt herself, and that other inmates had to pick her up.  (Doc. 1-1, at PageID 21).

Plaintiff alleges that for approximately eleven months she did not have proper fitting Depends underwear and developed an open wound on her inner thigh.  (Doc. 1-1, at PageID 21).

Plaintiff alleges that her personal wheelchair broke and that, when she was given a "loner chair" by Nurse Jordan, who is not named as a defendant, Plaintiff's personal wheelchair was thrown out.  Plaintiff alleges that the loner chair, which she had been using for four months at the time she filed the underlying action, was hard to use and did not come with a cushion, so Plaintiff had to borrow one from another inmate.  (Doc. 1-1, at PageID 22).

### C. Placement in the Infirmary/Surgery Referral

Plaintiff alleges that on December 17, 2021, she was called to the infirmary and told by non-defendant medical staff and the non-defendant Deputy Warden of Special Services that she was to be housed in the infirmary "because [she had] made too many complaints and it got to central office."  (Doc. 1-1, at PageID 22).  Plaintiff alleges that she said she did not want to be housed over there and left.  (Doc. 1-1, at PageID 22).

Plaintiff alleges that, on December 20, 2021, she was awoken from her sleep by Officer Ledley, who is not named as a defendant, stating that Plaintiff had to go the infirmary.  (Doc. 1-1, at PageID 23).  Plaintiff alleges that she rolled over and went back to sleep.  (Doc. 1-1, at PageID 23).  However, between 7 a.m. and 2 p.m., several non-defendant officers and Defendant Baldauf sent for Plaintiff, asked her why she did not want to go to the infirmary, and tried to talk

6

her into going there. (Doc. 1-1, at PageID 23). Later, Plaintiff spoke with Defendant Baldauf, who allegedly told Plaintiff that she was "sorry to let [Plaintiff] know [she] ha[d] to be housed in the infirmary." (Doc. 1-1, at PageID 23). Plaintiff allegedly told the Warden that she did not want to go, and the Warden allegedly responded: "[W]e have the best care and you're going to the infirmary." (Doc. 1-1, at PageID 23). Plaintiff alleges that she then stated, "no I'm not," but there were six officers standing behind her with mace and a camera to escort her to the infirmary. (Doc. 1-1, at PageID 23).

At the infirmary, Plaintiff alleges that she was placed on housing restrictions so she could not leave her room. (Doc. 1-1, at PageID 23). Plaintiff alleges that she was not allowed out of her room until 9:45 a.m. on December 21. (Doc. 1-1, at PageID 23). Plaintiff contends that, at 10 a.m., NP Ajibade told Plaintiff that she would have to stay in the infirmary until she saw the surgeon because she had made too many complaints about medical not taking care of her. (Doc. 1-1, at PageID 23). Plaintiff alleges that she remained in the infirmary for eight days. She alleges that, while she was there, her dressing was not changed twice a day "like they stated they were going to do per central office." (Doc. 1-1, at PageID 24).

Plaintiff alleges that she saw Dr. Katz at "FMC" on December 27, for a surgery consult. Plaintiff alleges that Dr. Katz referred Plaintiff to a CT scan and surgery. (Doc. 1-1, at PageID 24). After the consult, Plaintiff alleges that non-defendants Mrs. Duncan and Nurse Jackson spoke to her about a discharge plan. (Doc. 1-1, at PageID 24). Plaintiff avers that the discharge plan consisted of changing the dressing three times a day and making sure the colostomy bag stayed on so that feces would not get into the wounds. (Doc. 1-1, at PageID 24).

Plaintiff alleges that she was discharged from the infirmary on December 28, 2021, but that the medical staff "didn't want to change the dressing for days." (Doc. 1-1, at PageID 24).

7

Plaintiff alleges that she filed an informal complaint and that on January 19, 2022, an email was sent telling the nurses to change Plaintiff's dressing. Plaintiff alleges, however, that by that time she "was not seeing a NP every 10 days." (Doc. 1-1, at PageID 24).

Plaintiff alleges that she had been scheduled for multiple trips to "FMC" for her wheelchair to be replaced, but when she arrived they said the appointment had been rescheduled. Plaintiff alleges that, after the third trip, "and nothing being done," she filed an informal complaint and refused the fourth trip. Plaintiff alleges that Nurse Jackson told Plaintiff "to give them another chance" and Plaintiff agreed. (Doc. 1-1, at PageID 24-25).

Although not entirely clear, it appears that Plaintiff returned to "FMC" on February 14, 2022, for another surgery consult. (Doc. 1-1, at PageID 25). Plaintiff asserts that she sat there from 9 a.m. to 2:00 p.m., when Dr. Katz asked why she was there and said that he did not need to see her. He allegedly said, "[Y]ou haven't had surgery yet? . . . Why, I referred you to surgery and a [CT] scan 2 months ago. . . . I don't know what ORW read wrong but I will put it in your chart again." (Doc. 1-1, at PageID 25). Plaintiff alleges that that was the fifth time she had travelled to FMC for "no reason." (Doc. 1-1, at PageID 25). Plaintiff asserts that she filed another informal complaint when she returned to ORW. Plaintiff further alleges that she refused a trip to physical therapy on February 15 because she had travelled back and forth five times and nothing had been done. (Doc. 1-1, at PageID 25).

For relief, Plaintiff requests money damages to pay for medical bills, a wheelchair, and "pain and suffering." (Doc. 1-1, at PageID 25). Plaintiff also seeks injunctive relief in the form of an order directing "[a]ll buildings that aren't accessible to be made accessible" (Doc. 1-1, at PageID 25), that she receive proper medical care and equipment (Doc. 1-1. at PageID 18), and that corrective action be taken for inappropriate supervision (Doc. 1-1, at PageID 18).

### III.

Liberally construing Plaintiff's complaint, *Erickson*, 551 U.S. at 94; *see also* Fed. R. Civ. P. 8(e), the Court understands Plaintiff's allegations to assert the following claims, which for the sake of clarity, the Court will refer to as counts. *See, e.g., Sedore v. Burt*, No. 1:16-CV-903, 2018 WL 3062021, at *3 (W.D. Mich. Mar. 20, 2018), *adopted,* No. 1:16-CV-903, 2018 WL 1790086 (W.D. Mich. Apr. 16, 2018) (construing claims in *pro se* complaint pursuant to Fed. R. Civ. P. 8(e)).

**Count I:** In October 2021, while Plaintiff was waiting for another inmate to carry her into the building for her B.O.S.S. class, Defendant Kramer screamed at Plaintiff for being "out of place" and placed her in the "hole," where she remained for three hours (Doc. 1-1, at PageID 19-20).

**Count II:** Plaintiff filed a grievance against Lt. Kramer, but was told they needed more time and, after five months, had still not received a reply. (Doc. 1-1, at PageID 20).

**Count III:** Due to the building not being accessible, Plaintiff was only allotted one day a week for the class when the regular class was allotted five days a week. Plaintiff was given a "special discharge." (Doc. 1-1, at PageID 20).

**Count IV:** When on another occasion Plaintiff was asked to model for a student in cosmetology, she had to be carried up to the third floor and back down. (Doc. 1-1, at PageID 20).

**Count V:** Plaintiff put in a cash slip to get her hair done in July but "it was never answered because of [her] disability." (Doc. 1-1, at PageID 20).

**Count VI:** When Plaintiff ordered a "box" from the "vault, "she had to ask another inmate to get it for her because the basement was not accessible. (Doc. 1-1, at PageID 20). As a

9

result, if there was anything wrong with the box, Plaintiff could not return it. (Doc. 1-1, at PageID 20).

**Count VII:** Plaintiff received improper medical care for wounds from her body rejecting mesh, resulting in infections. (Doc. 1-1, at PageID 21).

**Count VIII:** Plaintiff asked for a new shower chair for over six months but did not receive one. The shower chair she used collapsed several times, resulting in injury and other inmates having to pick her up. (Doc. 1-1, at PageID 21).

**Count IX:** Plaintiff did not have proper fitting Depends underwear for approximately eleven months and developed an open would on her inner thigh. (Doc. 1-1, at PageID 21).

**Count X:** When Plaintiff's personal wheelchair broke, the loner chair she received was hard to use and did not come with a cushion, so Plaintiff had to borrow one from another inmate. (Doc. 1-1, at PageID 22).

**Count XI:** Plaintiff's broken wheelchair was thrown out. (Doc. 1-1, at PageID 22).

**Count XII:** In December 2021, Plaintiff was housed in the infirmary against her will for eight days "because [she had] made too many complaints and it got to central office." (Doc. 1-1, at PageID 22-23).

**Count XIII:** When Plaintiff told Defendant Baldauf that Plaintiff would not go to the infirmary, six officers with mace and a camera escorted her to the infirmary. (Doc. 1-1, at PageID 23).

**Count XIV**: While in the infirmary, Plaintiff's dressing was not changed twice a day "like they stated they were going to do per central office." (Doc. 1-1, at PageID 24).

**Count XV:** Following her discharge from the infirmary on December 28, 2021, medical staff did not follow the discharge plan to change the dressing three times a day. (Doc. 1-1, at

PageID 24).

**Count XVI:** Plaintiff was scheduled for multiple trips to "FMC" for her wheelchair to be replaced, for physical therapy, and for a follow-up surgery consult. However, when she arrived, nothing was done. (Doc. 1-1, at PageID 24-25).

**Count XVII:** On February 14, 2022, while at FMC, Dr. Katz allegedly said, "[Y]ou haven't had surgery yet? . . . Why, I referred you to surgery and a [CT] scan 2 months ago. . . . I don't know what ORW read wrong but I will put it in your chart again." (Doc. 1-1, at PageID 25).[5]

The Court understands Plaintiff to be asserting the following causes of action: violations of the ADA and/or Rehabilitation Act based on allegations that she was denied proper accommodations with respect to Counts III through VI and VIII through X; violations of the Eighth Amendment based on allegations of deliberate indifference to her serious medical needs with respect to Counts VII and XIV through XVII, violations of the First Amendment and/or the ADA[6] based on allegations of retaliation with respect to Count XII, violations of the Eighth Amendment based on allegations of excessive force with respect to Count XIII, and violations of the Fourteenth Amendment based on allegations of denial of due process with respect to Counts I, II and XI.

---

[5]Plaintiff's complaint contains certain allegations from which the Court is unable to infer a cause of action: " Officer Rispress cuffed inmate Peyton 107836 that pushed me to the R&R building and told her if she speaks on anything she saw or where they placed [Plaintiff] he was taking her to the hole" (Doc. 1-1, at PageID 24), and "On [December 23, 2021] Warden Baldauf came to my door telling me she will bring me commissary back there trying to bribe me" (Doc. 1-1, at PageID 24). These allegations should be dismissed for failure to state a claim. *Iqbal*, 556 U.S. at 678.

[6]The Court does not understand Plaintiff to be asserting a retaliation claim under the Rehabilitation Act, however, because "although the [Rehabilitation Act] incorporates the anti-retaliation provision of the ADA by reference, it does so only insofar as such actions relate to employment." *Meeks v. Schofield*, 10 F. Supp. 3d 774, 799 (M.D. Tenn. 2014).

At this stage in the proceedings, without the benefit of briefing by the parties to this action, the Court concludes that Plaintiff may proceed at this juncture against Defendant Baldauf with Counts III through VI, and Counts VIII through X, for alleged failure to provide reasonable accommodations in violation of the ADA and the Rehabilitation Act, and with Count XII, for alleged retaliation in violation of the ADA and/or the First Amendment. Plaintiff's ADA and/or Rehabilitation Act claims may proceed against Defendant Baldauf in an official capacity and only for compensatory damages. Plaintiff's First Amendment retaliation claim may proceed against Defendant Baldauf in an individual capacity for monetary damages. However, Plaintiff's remaining claims should be dismissed in their entirety pursuant to 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted.

As an initial matter, Plaintiff has not stated a viable claim for injunctive relief. As set forth above, Plaintiff seeks injunctive relief in the form of an order directing "[a]ll buildings that aren't accessible to be made accessible" (Doc. 1-1, at PageID 25), that she receive proper medical care and equipment (Doc. 1-1. at PageID 18), and that corrective action be taken for inappropriate supervision (Doc. 1-1, at PageID 18). These requests are moot because Plaintiff has been released from the ODRC. *See, e.g., Parks v. Reans,* 510 F. App'x 414, 415 (6th Cir. 2013) (per curiam) (citing *Kensu v. Haigh,* 87 F.3d 172, 175 (6th Cir. 1996)) (holding that the district court properly dismissed the plaintiff's request for injunctive and declaratory relief based on incidents that had occurred at a prison facility where he was previously confined because the request was rendered "moot upon his transfer to a different facility"); *cf. Dulaney v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (holding that request for injunctive relief based on Eighth Amendment claim of denial of medical care was rendered moot by the plaintiffs' release from the prisons involved in the case). Plaintiff's claims for injunctive relief should therefore be dismissed.

Next, to the extent that Plaintiff seeks punitive damages as to her ADA and/or Rehabilitation Act claims, such damages are unavailable and any claims for punitive damages under the ADA and/or Rehabilitation Act should be dismissed. *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002) ("Because punitive damages may not be awarded in private suits brought under Title VI of the 1964 Civil Rights Act, it follows that they may not be awarded in suits brought under § 202 of the ADA and § 504 of the Rehabilitation Act.").[7]

Additionally, any § 1983 claims against the Defendants in an official capacity must be dismissed to the extent that Plaintiff seeks monetary damages. Absent an express waiver, a state is immune from damage suits under the Eleventh Amendment. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 144 (1993); *Edelman v. Jordan*, 415 U.S. 651, 673 (1974). The State of Ohio has not constitutionally nor statutorily waived its Eleventh Amendment immunity in the federal courts. *See Johns v. Supreme Court of Ohio*, 753 F.2d 524, 527 (6th Cir. 1985); *State of Ohio v. Madeline Marie Nursing Homes*, 694 F.2d 449, 460-62 (6th Cir. 1982). The Eleventh Amendment bar extends to actions where the state is not a named party, but where the action is essentially one for the recovery of money from the state. *Edelman*, 415 U.S. at 663; *Ford Motor Company v. Dep't of Treasury*, 323 U.S. 459, 464 (1945). A suit against Defendants in their official capacities would, in reality, be a way of pleading the action against the entity of which Defendants are agents. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978). Thus, actions against state officials in their official capacities are included in this bar. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 70-71 (1989); *Scheuer v. Rhodes*, 416 U.S. 232 (1974). *See*

---

[7]At this time, the Court expresses no opinion as to the applicability of sovereign immunity to Plaintiff's ADA and/or Rehabilitation Act claims to the extent that Plaintiff seeks compensatory damages. *See, e.g., Meeks v. Schofield*, No. 3:12-MC-00035, 2012 WL 1934416, at *3 (M.D. Tenn. May 29, 2012) (allowing ADA and Rehabilitation Act compensatory damages claims to proceed at the screening stage).

*also Colvin v. Caruso*, 605 F.3d 282, 289 (6th Cir. 2010) (citing *Cady v. Arenac Co.*, 574 F.3d 334, 344 (6th Cir. 2009)) ("[A]n official-capacity suit against a state official is deemed to be a suit against the state and is thus barred by the Eleventh Amendment, absent a waiver." (citation and ellipsis omitted)). Therefore, although the Court expresses no opinion at this time as to the applicability of sovereign immunity to Plaintiff's ADA and/or RA claims, *see* note 7, *supra*, Defendants are immune from suit under § 1983 in their official capacities to the extent that Plaintiff seeks monetary damages. *See Winokur v. Ann Arbor Pub. Sch.*, No. 90-1942, 1991 WL 23555, at *1 (6th Cir. Feb. 26, 1991) ("Finally, to the extent the Defendants are sued in their official capacity, they are not subject to suit for monetary damages under 42 U.S.C. § 1983.").

Further, "[t]he proper defendant under a Title II claim is the public entity or an official acting in his official capacity." *Mitchell v. Horton*, No. 2:18-CV-216, 2019 WL 1025562, at *5 (W.D. Mich. Mar. 4, 2019) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002)). Title II of the ADA does not provide a private right of action against a public employee acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("[N]either the ADA nor the [Rehabilitation Act] impose[s] liability upon individuals."). Any individual capacity claims under the ADA and the Rehabilitation Act should therefore be dismissed.

Plaintiff's claims against Defendant Kramer should also be dismissed. The only allegations in the complaint against Lt. Kramer are that Kramer screamed at Plaintiff for being out of place and put Plaintiff in the "hole," where Plaintiff remained for three hours. (Doc. 1-1, at PageID 19-20). These allegations are insufficient to state a constitutional claim. Erroneous or even fabricated allegations of misconduct by an inmate, standing alone, do not constitute a deprivation of a constitutional right. *See, e.g., Reeves v. Mohr,* No. 4:11cv2062, 2012 WL

14

275166, at *2 (N.D. Ohio Jan. 31, 2012) (and cases cited therein) (holding that the prisoner failed to state a claim upon which relief may be granted to the extent that he claimed he had "a constitutional right to be free from false accusations"). "A constitutional violation may occur, if as a result of an accusation, the Plaintiff was deprived of a liberty interest without due process." *Reeves, supra,* 2012 WL 275166, at *2 (citing *Sandin v. Conner,* 515 U.S. 472, 485 (1995)). Plaintiff's allegations that she was placed in the "hole" for three hours are insufficient to trigger a liberty interest. *See Rimmer-Bey v. Brown*, 62 F.3d 789, 791 n.3 (6th Cir. Aug. 9, 1995) (noting that the Supreme Court in *Sandin* "concluded that confinement in disciplinary segregation for 23 hours and 10 minutes per day" did not implicate a liberty interest). Accordingly, Count I should be dismissed.

Moreover, Plaintiff has failed to state a claim upon which relief can be granted to the extent that she challenges the handling of her grievance against Lt. Kramer. Plaintiff has no federal constitutional right to an effective prison grievance procedure. *See, e.g., Hill v. Warden, Southern Ohio Corr. Facility,* No. 1:12cv63, 2012 WL 1639991, at *2 (S.D. Ohio Mar.13, 2012) (Litkovitz, M.J.) (recommending dismissal of portion of complaint complaining about "the failure of prison staff to provide [Plaintiff] with inmate grievance forms and other deficiencies in the inmate grievance procedure" because "plaintiff has no federal constitutional right to an effective prison grievance procedure"), *adopted,* 2012 WL 1623565 (S.D. Ohio May 9, 2012) (Weber, J.); *Dearing v. Mahalma,* No. 1:11cv204, 2011 WL 3739029, at *7 (S.D. Ohio Aug.24, 2011) (Barrett, J.) (holding that the plaintiff's allegations referring to "his dissatisfaction with the . . . investigation of [an] allegedly mishandled letter" through the prison grievance process did not state an actionable claim under 42 U.S.C. § 1983); *Williams v. Harris,* No. 1:11cv362, 2011 WL 3667438, at *3 (S.D. Ohio June 15, 2011) (Litkovitz, M.J.) (recommending dismissal of

15

complaint against prison official responsible for responding to institutional grievances because the plaintiff had "no constitutional right to an effective grievance procedure"), *adopted,* 2011 WL 3667389 (S.D. Ohio Aug. 22, 2011) (Dlott, J.); *see also Walker v. Michigan Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir.2005) (per curiam) (and cases cited therein); *Argue v. Hofmeyer,* 80 F. App'x 427, 430 (6th Cir. 2003) (and cases cited therein); *Overholt v. Unibase Data Entry, Inc.,* No. 98–3302, 2000 WL 799760, at *3 (6th Cir. June 14, 2000)). Count II should therefore be dismissed.

Likewise, Plaintiff's claims under the Eighth Amendment for alleged deliberate-indifference to her serious medical needs are also subject to dismissal. Plaintiff fails to set forth factual allegations showing that either of the two named Defendants—Warden Baldauf and Lt. Kramer—were personally involved in the alleged constitutional violation. "It is well settled that a defendant cannot be held liable under 42 U.S.C. § 1983 for alleged constitutional violations absent a showing that the defendant was personally involved in some manner in the allegedly unconstitutional conduct." *Williams v. Hodge*, No. 3:08-0387, 2009 WL 47141, at *3 (M.D. Tenn. Jan. 7, 2009) (citing *Hardin v. Straub*, 954 F.2d 1193, 1196 (6th Cir. 1992)). Specifically, a plaintiff "must show that the defendant personally participated in, or otherwise authorized, approved, or knowingly acquiesced in, the allegedly unconstitutional conduct." *Hodge*, 2009 WL 47141, at *3 (citations omitted).

There is nothing in Plaintiff's complaint indicating that Defendants Baldauf or Kramer were involved in the alleged deliberate indifference to Plaintiff's medical needs. And to the extent Plaintiff seeks to hold the Warden liable under the theory of *respondeat superior*, or because of the Warden's supervisory position, the law does not permit her to do so. Rather, "[t]o be held liable, a supervisor must have encouraged the specific incident of misconduct or in some

other way directly participated in it." *Hodge*, 2009 WL 47141, at *4 (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Plaintiff alleges no such facts against the Warden. Accordingly, Counts VII and XIV through XVII should be dismissed.

Count XI, which the Court understands to allege a federal claim for a denial of Plaintiff's property without due process of law, should also be dismissed. Before Plaintiff may challenge the alleged deprivation of her personal property in federal court, Plaintiff must first "plead . . . that state remedies for redressing the wrong are inadequate." *Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). *See also Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981), *rev'd on other grounds*, *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). "If satisfactory state procedures are provided in a procedural due process case, then no constitutional deprivation has occurred despite the injury." *Jefferson v. Jefferson Cty. Pub. Sch. Sys.*, 360 F.3d 583, 587-88 (6th Cir. 2004). A Plaintiff "may not seek relief under [42 U.S.C. §] 1983 without first pleading and proving the inadequacy of state or administrative processes and remedies to redress her due process violations." *Id.* at 588. Plaintiff has failed to sufficiently plead that the post-deprivation tort remedies available to her under Ohio law are inadequate to adjudicate his property-loss claim. *See Fox v. Van Oosterum*, 176 F.3d 342, 349 (6th Cir. 1999) (citing *Hudson*, 468 U.S. at 534-36) ("State tort remedies generally satisfy the postdeprivation process requirement of the Due Process Clauses.").[8]

Nor has Plaintiff stated a claim upon which relief may be granted in Count XIII. In that count, Plaintiff appears to allege that she was forced to go to the infirmary in December 2021 because, when she tried to refuse, six guards stood behind her with mace and a camera. (Doc. 1-

---

[8]For example, Plaintiff has not alleged that the filing of a complaint in the Ohio Court of Claims is inadequate. *See Haynes v. Marshall,* 887 F.2d 700, 704 (6th Cir. 1989).

17

1, at PageID 23). These allegations are insufficient to state an excessive-force claim under the Eighth Amendment because there are no allegations of physical force. *See, e.g., Smith v. Augustine*, No. 07 C 81, 2009 WL 481639, at *6 (N.D. Ill. Feb. 25, 2009) ("An officer screaming and yelling does not constitute excessive force because it does not involve physical force.") (citing *McNair v. Coffey*, 279 F.3d 463, 467 (7th Cir. 2002)). *See also Wingo v. Tennessee Dep't of Corr.*, 499 F. App'x 453, 455 (6th Cir. 2012) ("Verbal harassment or idle threats by a state actor do not create a constitutional violation and are insufficient to support a section 1983 claim for relief.").

### IV.

Accordingly, in sum, Plaintiff may proceed at this juncture against Defendant Baldauf with Counts III through VI, and Counts VIII through X, for alleged failure to provide reasonable accommodations in violation of the ADA and the Rehabilitation Act, and with Count XII, for alleged retaliation in violation of the ADA and/or the First Amendment. Plaintiff's ADA and/or Rehabilitation Act claims may proceed at this juncture against Defendant Baldauf in an official capacity and only for compensatory damages. Plaintiff's First Amendment retaliation claim may proceed at this juncture against Defendant Baldauf in an individual capacity for monetary damages. However, for the above-stated reasons, Plaintiff's remaining claims should be dismissed. *See* 28 U.S.C. § 1915(e)(2)(B).

Plaintiff has failed to provide summons or U.S. Marshal forms for service of process. It is therefore **ORDERED** that Plaintiff, **within thirty (30) days** of the date of this Order, submit a completed summons and U.S. Marshal form for Defendant Baldauf. **Plaintiff is advised that failure to comply with this Order may result in the dismissal of this action for want of prosecution.**

**IT IS THEREFORE RECOMMENDED THAT**:

1.  The complaint be **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B), **with the exception of** Plaintiff's claims against Defendant Baldauf in Counts III through VI, and Counts VIII through X, for alleged failure to provide reasonable accommodations in violation of the ADA and the Rehabilitation Act, and in Count XII, for alleged retaliation in violation of the ADA and/or the First Amendment. Plaintiff's ADA and/or Rehabilitation Act claims may proceed at this juncture against Defendant Baldauf in an official capacity, and only for compensatory damages. Plaintiff's First Amendment retaliation claim may proceed at this juncture against Defendant Baldauf in an individual capacity for monetary damages.

**IT IS THEREFORE ORDERED THAT:**

1.  Within **thirty (30) days** of receipt of this Order, Plaintiff is **ORDERED** to submit completed summons and United States Marshal forms for Defendant Baldauf.

2.  The Clerk of Court is **DIRECTED** to send to Plaintiff a summons form and a United States Marshal form for this purpose. Upon receipt of the completed summons and United States Marshal forms, the Court **ORDERS** service of process by the United States Marshal in this case.

**PROCEDURE ON OBJECTIONS**

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and Recommendation will result in a waiver of the right to *de novo* review by the District Judge and waiver of the right to appeal the judgment of the District Court. *See, e.g., Pfahler v. Nat'l Latex Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that defendant waived appeal of district court's denial of pretrial motion by failing to timely object to the magistrate judge's report and recommendation). Even when timely objections are filed, appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation omitted).

       IT IS SO ORDERED.


Date: May 20, 2022                            /s/ Kimberly A. Jolson
                                                                       KIMBERLY A. JOLSON
                                                                       UNITED STATES MAGISTRATE JUDGE